IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANESSA CRUZ-SMITH | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-3609 |
| | : | |
| MICHAEL SINCLAIR, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                            **August 18, 2011**

      Plaintiff Vanessa Cruz-Smith, a police officer for the Borough of Nazareth (the Borough), brings employment discrimination claims against the Borough, former Chief of Police Michael Sinclair, current Chief of Police Thomas Trachta, and Borough Police Detective Frederick Lahovski pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq. Defendants ask this Court to dismiss Cruz-Smith's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion will be granted in part and denied in part.

**FACTS**[1]

      Cruz-Smith began working for the Borough as a police officer in April 2006. She believes she was both the first female and the first Puerto Rican police officer employed by the Borough. At some point during Cruz-Smith's employment, Sinclair told Cruz-Smith females had "no place in his department." Compl. ¶ 13. On another occasion, Sinclair advised Cruz-Smith not to "'advertise'

---

[1] For purposes of the instant motion to dismiss, this Court accepts as true all factual allegations in Cruz-Smith's Complaint and the reasonable inferences that can be drawn from them, but "disregard[s] legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

her national origin/ethnicity because 'wetbacks' were not common in the area serviced by the Department." *Id.*

On August 27, 2008, Cruz-Smith and Lahovski were involved in an on-duty altercation with a criminal suspect who was later charged with aggravated assault against a police officer. Cruz-Smith was injured during the incident and was thereafter placed on off-duty status as a result of her injuries. Although Defendants knew the extent of Cruz-Smith's injuries, while she was off duty, Defendants attempted to restrict her continued access to worker's compensation and Heart and Lung Act benefits by challenging her medical documentation and her asserted inability to perform her normal duties. Defendants also petitioned to terminate Cruz-Smith's benefits, and attempted to discipline her for failing to bring her complete medical records to an independent medical examination Defendants had ordered.[2] Cruz-Smith alleges these actions were part of a campaign by Sinclair to remove her from her position "through the manipulation of work rules and standards, and their disparate application to [her]." Compl. ¶ 15.

On April 16, 2009, while Cruz-Smith was still off duty, a preliminary hearing was held in the criminal case which arose out of the August 27, 2008, incident. Lahovski knowingly made insufficient attempts to notify Cruz-Smith of the hearing, allegedly at Sinclair's behest. Because Cruz-Smith did not receive notice of the hearing, she did not attend it. At the hearing, the aggravated assault charges were withdrawn.

Soon after the hearing, Cruz-Smith contacted the police association's attorney, who sent correspondence regarding the problem of Cruz-Smith not receiving adequate notice of scheduled

---

[2] Because the Complaint attributes this conduct to "Defendants," it is not clear who took what action with respect to Cruz-Smith's benefits or the attempted disciplinary action against her.

hearings.³  Defendants nevertheless initiated disciplinary proceedings against Cruz-Smith relating to the April 16, 2009, hearing, and the Borough terminated her employment effective June 1, 2009.

Cruz-Smith filed a grievance regarding her termination and was ultimately reinstated to her position by arbitration award of September 28, 2009.  Following Cruz-Smith's reinstatement, Trachta, who had replaced Sinclair as Chief of Police, "initiated inquiries and further proceedings to obstruct and delay [Cruz-Smith's] continued receipt of worker's compensation and [H]eart and [L]ung [A]ct benefits," which benefits have since been discontinued.  Compl. ¶ 27.

Cruz-Smith alleges she was subjected to discriminatory treatment based on her gender and national origin and to a hostile work environment, in violation of the Fourteenth Amendment's Equal Protection Clause, Title VII, and the PHRA.  She also alleges she was subjected to retaliation for speaking out on matters of public concern and petitioning the government for redress of her grievances, in violation of the First Amendment.  Cruz-Smith brings her constitutional claims against all Defendants pursuant to 42 U.S.C. § 1983⁴ and asserts Title VII and PHRA claims against only the Borough.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

³ The Complaint does not specify to whom such correspondence was sent.

⁴ The Complaint does not specify whether Sinclair, Trachta, and Lahovski are sued in their individual or official capacities.  Because claims against government officials in their official capacities are subject to dismissal as redundant of claims against the government entity itself, and because the parties have treated the claims against the individual Defendants as individual capacity claims by briefing the defense of qualified immunity, the Court will construe the claims against the individual Defendants as individual capacity claims.

*Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, a district court first should separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).

Defendants first argue Cruz-Smith's claims for gender and national origin discrimination should be dismissed because Cruz-Smith has not alleged facts that plausibly suggest she was subjected to an adverse employment action because of her gender or national origin, as required to state a discriminatory treatment claim under the Equal Protection Clause, Title VII, or the PHRA.[5] *See, e.g.*, *Zimmer v. Sec'y of Dep't of Homeland Sec.*, 297 F. App'x 88, 89 (3d Cir. 2008) (upholding the dismissal of a plaintiff's race discrimination claim where the complaint "d[id] not contain factual matter that would plausibly suggest that he was terminated on the basis of race"). Specifically, Defendants argue Sinclair's alleged statements are "insufficient to give rise to a causal connection between [Cruz-Smith's] gender [or national origin] and any alleged adverse job action." Defs.' Mem. in Supp. of Mot. to Dismiss 8, 11. Defendants also argue the Complaint fails to allege any facts demonstrating a causal connection between Cruz-Smith's gender or national origin and any action taken by Trachta or Lahovski.

In support of their argument regarding Sinclair's statements, Defendants rely on *Ezold v.*

---

[5] The showing required to prove a discrimination claim is the same under the Equal Protection Clause, Title VII, and the PHRA. *Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 814 n.1, 816 (3d Cir. 2010).

4

*Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir. 1993), and *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. 1999), in which the Third Circuit held stray sexist comments by individuals not involved in a challenged adverse employment decision were insufficient, standing alone, to support a finding of gender discrimination.[6]  Both *Ezold* and *Pivirotto*, however, were decided on review of a judgment following a trial, and the Third Circuit thus considered whether the comments at issue were sufficient to support a finding that discrimination was more likely than not a determinative cause of the adverse employment action.  This case, in contrast, is before the Court on a motion to dismiss, and the question, therefore, is whether Cruz-Smith has "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  *Fowler*, 578 F.3d at 213 (citation omitted).

Taking the factual allegations of the Complaint as true, at some point during Cruz-Smith's employment, Sinclair, the Chief of Police, told Cruz-Smith, who was both the first female and the first Puerto Rican police officer employed by the Borough, that "females have no place in his department" and referred to her as a "wetback."  Compl. ¶ 13.  When Cruz-Smith was on off-duty status due to her job-related injuries, Sinclair made efforts to ensure Cruz-Smith did not receive

---

[6] In *Ezold*, the court held six sexist comments by the former chair of a law firm's litigation department over a five-year period were insufficient, in and of themselves, to sustain a finding that the firm's asserted reason for denying the plaintiff promotion to partner was a pretext for sex discrimination where the former chair who had made the sexist comments had left the firm by the time the partnership decision was made. 983 F.2d at 545-47.  In *Pivirotto*, the court held a company chairman's remarks that "women were unreliable employees because they get pregnant and because they get breast cancer," standing alone, could not form the basis for a jury verdict in the plaintiff's favor where the chairman did not make the decision to terminate the plaintiff and did not make the comments in the context of any employment decisions, and where there was no evidence the comments reflected a generally discriminatory attitude at the company. 191 F.3d at 358-59.  In both cases, the court observed that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."  *Id.* at 359; *Ezold*, 983 F.2d at 545.

notice of a preliminary hearing she was supposed to attend and then initiated disciplinary proceedings against her relating to the preliminary hearing, which proceedings led to her termination. These allegations are sufficient at the motion to dismiss stage to render plausible Cruz-Smith's claim that Sinclair's actions toward Cruz-Smith were based on her gender and/or national origin.[7]

The same is not true of Trachta and Lahovski, neither of whom is alleged to have made any of the derogatory remarks about Cruz-Smith. To bring a successful § 1983 claim for denial of equal protection against an individual government defendant, a plaintiff must prove the existence of purposeful discrimination by the defendant. *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). The plaintiff must show "some affirmative conduct by the [defendant] that played a role in the discrimination," and the discrimination must be based on the plaintiff's membership in a protected class. *Id.* The Complaint alleges both Trachta and Lahovski participated in efforts to terminate Cruz-Smith's receipt of worker's compensation and Heart and Lung Act benefits. The Complaint also alleges Lahovski participated in efforts to set Cruz-Smith up for improper disciplinary action by making "knowingly insufficient attempts" to notify her of a preliminary hearing she was supposed to attend and then giving misleading information about those attempts,

---

[7] Although Defendants also argue Cruz-Smith's claim for national origin discrimination must fail because Puerto Rico is part of the United States, making Cruz-Smith's national origin American, the Third Circuit has held otherwise. *See Chiang v. Veneman*, 385 F.3d 256, 269 (3d Cir. 2004) ("We have held . . . that the term Puerto Rican can designate national origin for purposes of a federal discrimination suit."); *see also Sanchez v. Tricorp Amusements, Inc.*, No. 08-4554, 2010 WL 4923354, at *8 n.4 (D.N.J. Nov. 29, 2010) (rejecting as frivolous a defendant's argument that a plaintiff who identified herself as Hispanic Puerto Rican was not a member of a protected class because her national origin was American). The Court also rejects Defendants' argument that Sinclair's use of the term "wetback" did not display any animus toward Cruz-Smith because it is a derogatory term for persons of Mexican descent and Cruz-Smith is Puerto Rican. Sinclair's use of this derogatory term is suggestive of bias against Cruz-Smith as a person of Hispanic descent.

all at Sinclair's behest.[8]  Compl. ¶ 23.  Neither Defendant, however, is alleged to have taken any action against Cruz-Smith because of her gender or national origin, or even to have known of Sinclair's discriminatory purpose.  Accordingly, Cruz-Smith's discrimination claim will be dismissed as to Trachta and Lahovski.

Defendants next argue Cruz-Smith's hostile work environment claims should be dismissed because the Complaint fails to allege discriminatory conduct that is sufficiently "severe or pervasive" to be actionable.[9]  To establish the existence of an actionable hostile work environment, a plaintiff must prove (1) she suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in her position; and (5) a basis for *respondeat superior* liability.  *See Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008).  To determine whether alleged harassment rises to the level of an actionable hostile work environment, a court must consider the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

[8] Trachta and Lahovski are also alleged to have assisted Sinclair in "manipulat[ing] the work rules and creat[ing] bogus and/or insubstantial bases upon which to discipline [Cruz-Smith]," Compl. ¶ 16; however, this is the type of conclusory allegation that is not entitled to an assumption of truth under *Iqbal*.  *See Wilson v. City of Phila.*, No. 10-2246, 2011 WL 692998, at *2 (3d Cir. Mar. 1, 2011) (holding a plaintiff's allegations that prosecutor defendants had "manipulated and coached witnesses, and then withheld from Plaintiff that they had done so" were "conclusory, [were] not entitled to an assumption of truth, and [were] insufficient to support [the plaintiff's] claims" (citation omitted)).

[9] Hostile work environment claims are subject to the same standards under Title VII, the PHRA, and the Equal Protection Clause.  *See Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007) (Title VII and the PHRA); *Pollock v. City of Phila.*, No. 06-4089, 2008 WL 3457043, at *8-9 (E.D. Pa. Aug. 8, 2008) (Title VII and the Equal Protection Clause).

employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). In evaluating the totality of the circumstances, a court must consider incidents of facially neutral mistreatment which may be motivated by discriminatory animus as well as overtly discriminatory actions. *See Cardenas v. Massey*, 269 F.3d 251, 261-62 (3d Cir. 2001) ("[T]he advent of more sophisticated and subtle forms of discrimination requires that [a court] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim.").

Defendants argue Cruz-Smith's hostile work environment claims must fail because the only overtly discriminatory conduct alleged is Sinclair's two comments, one about Cruz-Smith's gender and the other about her national origin. While these allegations, standing alone, plainly do not rise to the level of severe or pervasive harassment, Cruz-Smith has also alleged a gender- and national origin-motivated campaign by Sinclair to have her terminated. Cruz-Smith alleges that as part of this campaign, Sinclair directed Lahovski not to inform her of a preliminary hearing which she was required to attend and then to give misleading information about his efforts to contact her while Defendants initiated disciplinary proceedings against her, which resulted in her termination on grounds that were ultimately reversed. Cruz-Smith further alleges Defendants made efforts to terminate her worker's compensation and Heart and Lung Act benefits. Taken together, these allegations are sufficient at the pleading stage to state a claim for a hostile work environment based on gender and national origin against Sinclair and the Borough, but not against Trachta and Lahovski who are not alleged to have acted based on Cruz-Smith's gender or national origin. *See Carver v. City of Trenton*, 420 F.3d 243, 263-64 (3d Cir. 2005) (suggesting that racist comments directed to persons other than the plaintiff, coupled with evidence that defendants wrote intentionally false

8

memos and recommended the plaintiff for psychiatric treatment based on his race, might be sufficient to establish a hostile work environment).[10]

Dismissal is also warranted as to Cruz-Smith's First Amendment retaliation claim because Cruz-Smith has failed to allege she engaged in speech or petitioning activity regarding a matter of public concern. *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2491-93, 2500 (2011) (holding a public employee who sues a government employer under either the Speech Clause or the Petition Clause of the First Amendment must show she "spoke as a citizen on a matter of public concern"). Cruz-Smith argues her filing of "claims for workers compensation benefits and [H]eart and [L]ung [A]ct benefits . . . are clearly the types of petitioning activities that are protected by the First Amendment." Pl.'s Opp'n to Mot. to Dismiss 11. Although the Third Circuit has characterized worker's compensation claims as "examples of formal petitions" protected under the Petitions Clause, *Foraker v. Chaffinch*, 501 F.3d 231, 236 (3d Cir. 2007), such claims do not implicate a matter of public concern insofar as they seek only "an award of individualized benefits for a specific job-related injury." *Hoeft v. Dommisee*, 352 F. App'x 77, 81 (7th Cir. 2009) (holding a conspiracy

---

[10] Defendants argue the individual officers are entitled to qualified immunity because "[t]here is no clearly established constitutional right to unchallenged access to workers' compensation or Heart and Lung benefits; freedom from discipline for disregard of job responsibilities; or exemption from an implemented system of progressive discipline." Defs.' Mem. in Supp. of Mot. to Dismiss 17. This argument, which omits any mention of Cruz-Smith's allegations of gender and national origin bias, is premised on Defendants' contention that Cruz-Smith's allegations are insufficient to plausibly suggest Defendants took any action regarding her employment because of her gender or national origin. As set forth above, however, the Court has rejected this contention as to Sinclair. Because the right to be free from discrimination in the workplace based on sex and national origin was clearly established at all times relevant to this lawsuit, Sinclair has not demonstrated an entitlement to qualified immunity at the motion to dismiss stage. *See Andrews*, 895 F.2d at 1479-80 (holding individual defendants were "not protected by qualified immunity in treating, or allowing their subordinates to treat, female employees differently on the basis of gender in their work environment" and noting "the right to be free of discrimination based upon sex in the workplace[] was well grounded in law and widely known to the public in 1986").

aimed at getting a plaintiff fired after he announced his intention to apply for worker's compensation would not violate the First Amendment because the plaintiff's desire for such benefits implicated only a personal interest).[11] Because Cruz-Smith does not allege her claims for worker's compensation and Heart and Lung Act benefits sought anything other than an award of individual benefits, the filing of such claims cannot form the basis of a First Amendment retaliation claim. *See Roberts v. Ferman*, No. 09-4895, 2011 WL 2937398, at *14 (E.D. Pa. July 20, 2011) (holding a plaintiff's filing a claim for Heart and Lung Act benefits and worker's compensation benefits, through which the plaintiff sought to collect benefits due to him, did not address matters of public concern).[12]

Defendants also argue Cruz-Smith's § 1983 claims against the Borough should be dismissed because Cruz-Smith has not alleged a basis for municipal liability. A plaintiff seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). The plaintiff must

---

[11] Prior to the Supreme Court's decision in *Guarnieri*, the Third Circuit had distinguished First Amendment retaliation claims involving the Petition Clause from such claims involving the Speech Clause, holding that "[c]ontrary to the requirements for speech protection . . . , when a formal petition is made, the employee need not show that the subject matter of the petition involved a matter of public concern." *Foraker*, 501 F.3d at 236. In *Guarnieri*, the Supreme Court held the public concern test applies to First Amendment claims under both the Petition Clause and the Speech Clause, abrogating the Third Circuit decisions to the contrary. 131 S. Ct. at 2500-01.

[12] Insofar as Cruz-Smith seeks to base her First Amendment retaliation claim on harassment she allegedly suffered after she filed and won her grievance regarding her termination, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss 11-12, the same analysis applies. Because the Complaint does not allege Cruz-Smith's grievance raised anything other than the propriety of her own termination, the grievance does not implicate a matter of public concern. *See Emigh v. Steffee*, No. 10-3522, 2011 WL 3289827, at *5 (3d Cir. Aug. 2, 2011) (holding a public employee's grievances raising "only the correctness of disciplinary findings and the consequences of [a] disciplinary suspension" did not address a matter of public concern and therefore could not "form the predicate for a First Amendment retaliation claim").

not only identify conduct properly attributable to the municipality, but must "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[13] *Id.* at 404. Cruz-Smith argues the Complaint adequately alleges a § 1983 equal protection claim against the Borough because it alleges the Borough itself terminated Cruz-Smith's employment knowing of Sinclair's "racist and sexist propensities." Pl.'s Opp'n to Mot. to Dismiss 13-14; Compl. ¶ 14. The mere allegation that the Borough and its elected officials knew of such "racist and sexist propensities," however, is insufficient to render plausible Cruz-Smith's claim that the Borough's decision to terminate her following disciplinary proceedings at which Lahovski allegedly provided misleading information was based on Cruz-Smith's gender or national origin. *See Walsifer v. Borough v. Belmar*, 262 F. App'x 421, 425 (3d Cir. 2008) (holding a Borough could be liable under § 1983 for the Borough Council's conduct in acting on a police chief's allegedly discriminatory recommendation "only if the Council's decision was improperly motivated"). Cruz-Smith's § 1983 claim against the Borough will therefore be dismissed.

Finally, Defendants argue Cruz-Smith's demand for punitive damages should be stricken. Insofar as Cruz-Smith seeks such damages under the PHRA, the demand will be stricken because the PHRA does not permit such damages. *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570 n.3 (3d Cir. 2002). The request is otherwise denied without prejudice to reassertion on summary judgment.

For the reasons set forth above, the Court will grant Defendants' motion to dismiss Cruz-

---

[13] Because § 1983 itself "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right," a plaintiff in a § 1983 action "must establish the state of mind required to prove the underlying violation." *Id.* at 405.

11

Smith's § 1983 equal protection claims against Trachta, Lahovski, and the Borough, and her § 1983 First Amendment retaliation claim against all Defendants. The Court will also strike Cruz-Smith's request for punitive damages under the PHRA. The balance of Defendants' motion will be denied. In civil rights cases, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Because the Court cannot conclude amendment would be futile, Cruz-Smith will be permitted to file an amended complaint within 30 days of the date of this Memorandum.

        An appropriate order follows.

BY THE COURT:

_____

Juan R. Sánchez, J.